IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RAPID FUNDING GROUP, INC.,                                    CV. 07-1348-PK

                                                              FINDINGS AND
                                                              RECOMMENDATION

                              Plaintiff,

v.

KEYBANK NATIONAL ASSOCIATION,


                              Defendant.
_____

PAPAK, Magistrate Judge:

        This action was filed against defendant KeyBank National Association ("KeyBank") by

plaintiff Rapid Funding Group, Inc. ("RFG"), on September 11, 2007, alleging three claims for

breach of contract, one claim for negligent misrepresentation, and one claim for fraud.  This

court has jurisdiction over RFG's action pursuant to 28 U.S.C. § 1332(a), based on the complete

diversity of the parties and the amount in controversy.

Page 1 - FINDINGS AND RECOMMENDATION

Now before the court is KeyBank's motion to dismiss (#9), in connection with which KeyBank argues that each of the three oral contracts alleged to underlie RFG's breach of contract claims is subject to Oregon's statute of frauds and is, on that basis, unenforceable; that the special relationship prerequisite to a negligent misrepresentation claim is absent here as a matter of law; and, with respect to the fraud claim, both that the circumstances constituting fraud have not been pled with adequate particularity and that RFG has failed adequately to plead that its reliance on KeyBank's alleged statements was reasonable. This court has considered KeyBank's motion, all of the pleadings on file, and oral argument on behalf of the parties. For the reasons set forth below, this court recommends that KeyBank's motion to dismiss be granted as to each of RFG's claims for breach of contract and its claim for negligent misrepresentation, and denied as to RFG's claim for fraud.

## LEGAL STANDARD

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" specifically, it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. ---, 127 S.Ct. 1955, 1965 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.*, *quoting* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004); *see also* Fed. R. Civ. P. 8(a).

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). In considering a

motion to dismiss, this court accepts all of the allegations in the complaint as true and construes

them in the light most favorable to the plaintiff.  *See Kahle v. Gonzales*, 474 F.3d 665, 667 (9th

Cir. 2007).  Moreover, the court "presume[s] that general allegations embrace those specific facts

that are necessary to support the claim."  *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256

(1994), *quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  The court need not,

however, accept legal conclusions "cast in the form of factual allegations."  *Western Mining

Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## FACTUAL BACKGROUND

RFG is a private moneylender.  In or around April 2007, RFG learned that third-party

Trade Base Equipment, Inc. ("TBE"), was looking for a short-notice, no-security loan in order to

"complete a transaction involving commodities."  Although RFG typically only made loans

secured by assets or real property, TBE's principal, Brett Regal, suggested that in lieu of security,

defendant KeyBank could "vouch for TBE's financial assets and capability to perform the

contract."  TBE therefore authorized Daniel Roberts, an Assistant Vice President of Business

Banking for KeyBank and its Regional Manager in Beachwood, Ohio, to contact RFG and

"provide letters to RFG regarding TBE's financial capabilities."

Initially, Roberts provided RFG with two letters, each dated April 13, 2007.  In one he

stated that Regal had access to $10 million in credit from KeyBank, and in the other he stated

that Regal had access to over $30 million in credit from KeyBank.  Apparently on the strength of

these letters, but perhaps also on the basis of various oral representations to RFG regarding

TBE's financial assets and ability to perform its obligations, the particulars of which are not

specified in RFG's complaint, RFG and TBE negotiated the terms of a loan transaction whereby

RFG would lend TBE $310,000 ("Loan 1"), and within sixty days TBE would pay RFG $664,750 in satisfaction of the resulting debt.[1]

In connection with these negotiations, Roberts provided a letter to RFG "stating that TBE had a pending wire transfer of $35.61 million."  In addition, Roberts orally assured RFG that its loan of $310,000 to TBE would "secure a wire transfer to KeyBank on behalf of TBE from which Roberts agreed to forward the payment of $664,750 . . . to RFG."  It is this oral representation that forms the basis of RFG's first breach of contract claim.

Before finalizing the Loan 1 agreement, RFG inquired at the West Linn, Oregon, branch of KeyBank and verified that Roberts was a KeyBank employee.  Having verified Roberts' employment, RFG lent TBE $310,000 on April 27, 2007.

Approximately three weeks later, before Loan 1 was repaid, TBE requested a second, more substantial loan ("Loan 2"), purportedly to finance a contract for the transportation of Nigerian oil, in connection with which the repayment terms of Loan 1 would be renegotiated.  The second loan would be for $1.445 million, in exchange for which TBE would pay RFG $5 million within ninety days, in satisfaction of both Loan 1 and Loan 2.[2]

In connection with the negotiation of Loan 2, Roberts told RFG "not to worry about [TBE]," that "[TBE] has the money – you'll be repaid," and that TBE was in "excellent standing"

---

[1]   Had the Loan 1 transaction been completed as negotiated, RFG would have netted a profit of $355,000 on its $310,000 investment.  Such profit would have constituted a 114% return within a sixty day period, the equivalent of a nearly 700% annual interest rate.

[2]   Had the Loan 2 transaction been completed as negotiated, RFG would have netted a profit of $3,245,000 on its $1,755,000 investment.  Such profit would have constituted a 185% return within an approximately one hundred twenty day period, equivalent to an annual interest rate comparable to that contemplated in the Loan 1 transaction.

with KeyBank.  It is apparently the oral representation that RFG would "be repaid" that forms

the basis of RFG's second breach of contract claim.  In addition, Roberts sent RFG a letter dated

May 17, 2007, stating that Regal "has the capability to transact the sales/purchase agreement,"

and that TBE's payment to RFG "will be available forty five days after product has left its

origination port and successfully been verified and transferred to our refineries [*sic*] holding

tanks."  Roberts' oral assurances and comfort letter apparently form the basis of RFG's third

breach of contract claim, which alleges that KeyBank "held itself out as partner and guarantor of

Loan 2."

On the strength of Roberts' oral assurances and comfort letter, RFG lent TBE an

additional $1.445 million between May 17 and May 25, 2007.  Shortly thereafter, on June 4,

2007, RFG received a letter from KeyBank indicating that RFG "was no longer entitled to rely

on any letters sent by Roberts."  TBE subsequently defaulted on its repayment obligations.

This action followed.

## ANALYSIS

## I.    The Breach of Contract Claims

As noted above, RFG brings three claims for breach of contract, each premised on the

alleged existence of a different oral contract.  The first claim alleges that "Keybank and RFG

entered into a contract whereby RFG would provide Loan 1 to TBE in order to secure a wire

transfer to KeyBank.  In exchange, Keybank agreed to forward the payment of $664,750 on

Loan 1 [out of the proceeds of a then-pending wire transfer to TBE's account with KeyBank] to

RFG."[3]  The second claim alleges that, in exchange for consideration in the form of obtaining

"ready and immediate funding for [its] client, and . . . benefit[ing] from [its] banking relationship

with TBE," KeyBank orally promised that RFG would "be repaid" the amounts it would be owed

in connection with Loan 1 and Loan 2.  The third claim alleges that KeyBank "held itself out as a

partner," presumably as a partner of TBE, "and guarantor of Loan 2."

KeyBank moves to dismiss all three of RFG's breach of contract claims on the ground

that each of the alleged contracts was made orally, rather than in writing, and that under Oregon's

statute of frauds such contracts are unenforceable.  The statute of frauds provides, in relevant

part, as follows:

> (1) In the following cases the agreement is void unless it, or some note or
> memorandum thereof, expressing the consideration, is in writing and subscribed
> by the party to be charged, or by the lawfully authorized agent of the party;
> evidence, therefore, of the agreement shall not be received other than the writing,
> or secondary evidence of its contents in the cases prescribed by law:
>
> * * *
>
> (b) An agreement to answer for the debt, default or miscarriage of another.
>
> * * *

---

[3]  At oral argument, counsel for RFG conceded that, according to the allegations of the complaint, KeyBank's obligation under the alleged oral contract to forward funds to RFG out of the proceeds of a wire-transfer to its client TBE was obviated when RFG and TBE reached their agreement with respect to Loan 2, whereby TBE would repay both Loan 1 and Loan 2 in a single lump-sum payment.  Counsel explained that Claim 1 was intended to be treated as if pled in the alternative, in that KeyBank's alleged obligation under the Loan 1 contract could be effective under the circumstance where the Loan 1 contract between KeyBank and RFG was found valid and enforceable, but the Loan 2 contract between RFG and TBE was found void (and therefore ineffective to modify the terms of the Loan 1 contract).  KeyBank does not move for dismissal of Claim 1 on the ground that its obligation in connection with Loan 1, if any, was obviated before the time for performance occurred, but this court notes that, were the issue properly before the court, such an argument would likely provide an alternative ground to support the court's recommendation.

(h) An agreement, promise or commitment to lend money, to otherwise extend credit, to forbear with respect to the repayment of any debt payable in money, to modify or amend the terms under which the person has lent money or otherwise extended credit, to release any guarantor or cosigner or to make any other financial accommodation pertaining to an existing debt or other extension of credit. This paragraph does not apply:

>  (A) If no party to the agreement, promise or commitment is a financial institution as defined in ORS 706.008, a consumer finance company licensed under ORS chapter 725 or a mortgage banker as defined in ORS 59.840; or

>  (B) To a loan of money or extension of credit to a natural person which is primarily for personal, family or household purposes and not for business or agricultural purposes or which is secured solely by residential property consisting of one to four dwelling units, one of which is the primary residence of the debtor.

(2)(a) Except as provided in this subsection, defenses and exceptions created by provisions of the Oregon Revised Statutes or recognized by the courts of this state do not apply to subsection (1)(h) of this section.

(b) An agreement, promise or commitment which does not satisfy the requirements of subsection (1)(h) of this section, but which is valid in other respects, is enforceable if the party against whom enforcement is sought admits in the party's pleading, testimony or otherwise in court that the agreement, promise or commitment was made. The agreement is not enforceable under this paragraph beyond the dollar amount admitted.

(c) Nothing in subsection (1)(h) of this section precludes a party from seeking to prove the modification of any term relating to the time of repayment.

O.R.S. 41.580; *see also Coast Business Brokers, Inc. v. Hickman*, 239 Or. 121, 124 (1964) ("a writing to satisfy the statute of frauds must show the contracting parties, intelligently identify the subject matter involved, disclose the terms and conditions of the agreement, express the consideration and be signed by the party to be charged") (citation omitted).

KeyBank argues that subsection 1(h) and subsection 1(b) of the statute of frauds are each applicable to all three of the alleged oral contracts.  For the reasons set forth below, this court

agrees.  Because under Oregon law the burden is on the plaintiff to establish the existence of an

enforceable contract in an action for breach, *see Pendleton Grain Growers v. Pedro*, 271 Or. 24,

28 (1975), and here RFG is unable to do so as a matter of law, dismissal is appropriate as to each

of RFG's three claims for breach of contract.

A.    **Statute of Frauds:  Subsection 1(h)**

By its own terms, subsection 1(h) of Oregon's statute of frauds is applicable only where

at least one of the parties to the alleged contract is a "financial institution" within the meaning of

O.R.S. 76.008, where the alleged contract is not for the loan of money to a natural person for

personal, family, or household purposes or secured by a residence, and where the party to be

charged with the alleged contract has not admitted that the contract was entered into.  *See* O.R.S.

41.580(1)(h).  Here, it is undisputed that both KeyBank and RFG are financial institutions for all

material purposes, that none of the three alleged contracts was for the loan of money to a natural

person, and that KeyBank has denied the existence of the alleged contracts.  Subsection 1(h) is

therefore potentially applicable to the alleged contracts at issue here.

The parties dispute, however, whether any or all of the three alleged contracts constitutes

"[a]n agreement, promise or commitment to . . . make any . . . financial accommodation

pertaining to an . . . extension of credit."  O.R.S. 41.580(1)(h).  The word "accommodation" is

defined in the eighth edition of Black's Law Dictionary, in relevant part, as "[a] loan or other

financial favor. . . .  The act or an instance of making a change or provision for someone or

something; an adaptation or adjustment."  By its use of so general a term as "financial

accommodation," the Oregon legislature clearly evinced an intent to include within the ambit of

subsection 1(h) virtually any finance-related commitment a bank is capable of entering into.[4]

Moreover, there can be no issue as to whether the KeyBank's alleged promises "pertain[ed] to" an extension of credit. The term "pertain" is defined in the eighth edition of Black's Law Dictionary as meaning "[t]o relate to, to concern." Although KeyBank has not been alleged to have offered to extend credit to RFG, each alleged promise quite clearly related to and concerned RFG's loans to TBE, and the provision of a loan is necessarily an instance of extending credit to the borrower.

Because each of the three alleged promises was necessarily a financial accommodation pertaining to an extension of credit, under Oregon law each of the promises was void in the absence of a signed writing naming the contracting parties, intelligently identifying the subject matter involved, disclosing the terms and conditions of the agreement, and expressing the consideration therefor. *See Coast Business Brokers*, 239 Or. at 124. Because no such writing is alleged to exist in connection with any of the three promises, none of the three alleged contracts is enforceable as a matter of law, absent an applicable exception to the statute of frauds. Furthermore, there can be no applicable exception pursuant to O.R.S. 41.580(2)(a), which states plainly that "defenses and exceptions created by provisions of the Oregon Revised Statutes or recognized by the courts of this state do not apply to subsection (1)(h)." O.R.S. 41.580(2)(a).

RFG nevertheless challenges the application of subsection 2(a), arguing that by rendering certain defenses and exceptions to the statute of frauds unavailable under specified

---

[4] Indeed, it is evident from the plain language of the statute that the legislature drafted subsections 1(h) and 2(a) in order to provide remarkably expansive protection to the banking industry by preventing plaintiffs from bringing claims alleging undocumented contracts against financial institutions under virtually any set of circumstances.

Page 9 - FINDINGS AND RECOMMENDATION

circumstances, the Oregon legislature violated the so-called remedy clause of the Oregon constitution.  The remedy clause provides, in relevant part, that "every man shall have remedy by due course of law for injury done him in his person, property, or reputation."  Or. Const. Art. I § 10.  The Oregon Supreme Court has held that the purpose of the remedy clause "is to protect absolute common-law rights respecting person, property, and reputation as those rights existed when the Oregon constitution was drafted in 1857 [by guaranteeing the availability of a remedy] in the event of an injury."  *Smothers v. Gresham Transfer, Inc.*, 332 Or. 83, 118 (2001).  However, the court has also explained that nothing in the remedy clause "prohibits the legislature from changing a common-law remedy or form of procedure, attaching conditions precedent to invoking the remedy, or . . . abolishing old remedies and substituting new remedies."  *Id.* at 119.  Here, it is clear that subsection 2(a) does not abolish or render unavailable any previously extant common-law remedy, but rather merely modifies the conditions precedent for invoking available remedies (by attaching an absolute requirement for a writing under defined circumstances).  Under applicable Oregon Supreme Court jurisprudence, section 2(a) therefore does not violate the remedy clause of the Oregon constitution, and RFG is not entitled to avoid the application of the statute of frauds to any of the three alleged contracts.

## B.      Statute of Frauds:  Subsection 1(b)

Subsection 1(b) of the statute of frauds requires any enforceable "agreement to answer for the debt, default or miscarriage of another" to be memorialized by a signed writing.  Because each of the alleged contracts would have required KeyBank either to remit payment in satisfaction of or to guarantee a debt of third-party TBE, each of the alleged contracts falls within subsection 1(b) of the statute of frauds as a matter of law, and is therefore void and

unenforceable absent an applicable exception or defense.

RFG argues that several exceptions or defenses are applicable.  Specifically, RFG argues that KeyBank is estopped from invoking the statute of frauds, that it may avoid the statute of frauds under the doctrine of partial performance, and that the statute of frauds is inapplicable under the so-called main purpose doctrine.  Each of RFG's arguments is unavailing.

The Oregon Supreme Court has held that:

> The statute of frauds may not be invoked to perpetuate a fraud, nor will a party be permitted to insist upon the statute to protect him in the enjoyment of advantages procured from another, who, relying on an oral agreement, has acted and  placed himself in a situation in which he must suffer wrong and injustice if the agreement is not enforced.

*Neppach v. Or. & Cal. R.R. Co.*, 46 Or. 374, 397 (1905).  In keeping with this principle, the decisions of the Oregon courts make clear that both estoppel, *see Conklin v. Karban Rock, Inc.*, 94 Or. App. 593, 598-599 (1989), and partial performance, *see id. at* 599-600, are applicable as defenses to the statute of frauds only where the charged party's promise was calculated to inure to the charged party's benefit.  Similarly, the main purpose doctrine excuses the writing requirement only where the charged party's promise was chiefly intended to subserve a pecuniary interest of the charged party, rather than an interest of the promisee or of any third party.

Here, it is clear from the allegations of RFG's complaint that KeyBank had no direct pecuniary interest in RFG's provision of loans to KeyBank customer TBE, that KeyBank received no direct benefit from RFG's extension of credit to TBE, that KeyBank would experience no windfall in consequence of a finding that its alleged promises were unenforceable, and that the indirect benefits KeyBank is alleged to have received from the loan transactions

Page 11 - FINDINGS AND RECOMMENDATION

were *de minimus* at most.  As a matter of law, therefore, RFG is not entitled to avoid the statute of frauds on any of the theories it invokes.

Because the alleged contracts fall within subsection 1(b) of the statute of frauds, and because no exception or defense to the statute is applicable, dismissal is appropriate as to each of RFG's three claims for breach of contract on this alternative ground as well.

**II.      The Negligent Misrepresentation Claim**

RFG's fifth claim for relief is for negligent misrepresentation, arising out of the same facts that gave rise to RFG's claims for breach of contract.  Under Oregon law, a party may be found liable for economic loss sustained by another who reasonably relies on the party's negligent misrepresentation.  *See Conway v. Pacific Univ.*, 324 Or. 231, 236 (1996).  However, such liability must be predicated on a duty owed by the negligent actor to the injured party *beyond* the common law duty to exercise reasonable care to prevent foreseeable harm.  *See id.* Such a duty to avoid making negligent misrepresentations may only arise under Oregon law where the parties are in a "special relationship," such that the party making the representation was under an "obligation to pursue the interests of the other party," *id.* at 237, as a result of having been expressly "authorized . . . to exercise independent judgment in his or her behalf," *see id.* at 241.  *See id.* at 236-241.  The Oregon courts have specified that the focus of the inquiry in determining whether such a special relationship exists is:

> not on the subject matter of the relationship, such as one party's financial future; nor is it on whether one party, in fact, relinquished control to the other.  The focus instead is on whether the **nature of the parties' relationship itself** allowed one party to exercise control in the first party's best interests.  In other words, the law does not imply a tort duty simply because one party to a business relationship begins to dominate and to control the other party's financial future.  Rather, the law implies a tort duty only when that relationship is of the type that, by its

Page 12 - FINDINGS AND RECOMMENDATION

nature, allows one party to exercise judgment on the other party's behalf.

*Bennett v. Farmers Ins. Co.*, 332 Or. 138, 161-162 (2001) (emphasis original).

Here, RFG has alleged that "KeyBank had a special relationship with RFG." However, as noted above, this court is not required to accept as true legal conclusions "cast in the form of factual allegations." *Western Mining Council*, 643 F.2d at 624. The only factual basis expressly alleged in support of that legal conclusion is that "RFG has banked at KeyBank since May 2005, during which time KeyBank held RFG's assets and provided RFG with a line of credit." Also alleged in RFG's complaint, albeit not expressly in support of the negligent misrepresentation claim, are that KeyBank "held itself out" as a partner of TBE and as a guarantor of TBE's loan from RFG, that KeyBank agreed to distribute funds directly to RFG out of the proceeds of a wire transfer to TBE's benefit, and that KeyBank provided RFG with its opinion of TBE's creditworthiness.

As a matter of law, the facts alleged are insufficient to create a duty for KeyBank to avoid making negligent misrepresentations to RFG. At most, RFG has alleged that KeyBank had an incentive to promote RFG's interests, and that KeyBank controlled some information material to RFG's interests. However, nothing in the allegations could support the conclusion either that RFG had authorized KeyBank to exercise judgment in RFG's behalf, or that KeyBank was obliged to consider RFG's interests in addition to its own. Because the alleged relationship between the parties did not impose any duty on KeyBank to exercise independent judgment in order to further RFG's interests, under Oregon law KeyBank may not be found liable for negligent misrepresentation to RFG.

Moreover, it does not appear that RFG could amend its pleading so as to cure its defects.

Page 13 - FINDINGS AND RECOMMENDATION

In its opposition to KeyBank's motion and in oral argument, counsel for RFG argued that the

"facts of this case, once fully developed, will show that KeyBank exercised independent

judgment for the purported benefit of [RFG], creating a special relationship."  Setting aside the

fact that this court does not consider evidence beyond the allegations of the complaint when

considering the merits of a motion to dismiss, such a showing would be insufficient as a matter

of law to permit the negligent misrepresentation claim to survive KeyBank's motion.  As the

Oregon case law cited above makes clear, it would be immaterial that KeyBank *undertook* to

exercise independent judgment on RFG's behalf:  what the law requires is a relationship whose

characteristics would *oblige* KeyBank so to exercise its judgment, and would permit RFG to *rely*

on KeyBank so to do.  Here, as the facts alleged in RFG's complaint demonstrate, the

relationship among the parties was created by a series of arm's length financial transactions.

Dismissal is therefore appropriate as to RFG's negligent misrepresentation claim.

## III.    The Fraud Claim

RFG's fourth claim for relief is for fraud, arising out of the same facts that gave rise to

RFG's other claims.  Under Oregon law, the elements of a claim for fraud are:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge
> of its falsity or ignorance of its truth; (5) his intent that it should be acted on by
> the person and in the manner reasonably contemplated; (6) the hearer's ignorance
> of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his
> consequent and proximate injury.

*Webb v. Clark*, 274 Or. 387, 391 (1976); *Johnsen v. Mel-Ken Motors*, 134 Or. App. 81, 89

(1995).  In support of its motion to dismiss, KeyBank argues both that RFG failed to identify the

circumstances constituting fraud with sufficient particularity and that the facts alleged in the

complaint belie as a matter of law RFG's allegations that it was entitled to rely on KeyBank's

representations.

## A.      Rule 9(b) Particularity Requirement

When sitting in diversity, this court applies state law as to the elements of a plaintiff's

fraud claim, but applies federal law as to how such elements must be pled:

> It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity
> requirement applies to state-law causes of action.  While a federal court will
> examine state law to determine whether the elements of fraud have been pled
> sufficiently to state a cause of action, the Rule 9(b) requirement that the
> circumstances of the fraud must be stated with particularity is a federally imposed
> rule.

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (citations, internal quotation

marks omitted).  Federal Civil Procedure Rule 9(b) provides, in relevant part, that "[i]n all

averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated

with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be

averred generally."  Fed. R. Civ. P. 9(b).

The particularity requirement is satisfied if the pleading "identifies the circumstances

constituting fraud . . . so that the defendant can prepare an adequate answer from the

allegations."  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).  That

is, the allegations must be sufficiently specific "to give defendants notice of the particular

misconduct which is alleged to constitute the fraud . . . so that they can defend against the charge

and not just deny that they have done anything wrong."  *Semegen v. Weidener*, 780 F.2d 727,

731 (9th Cir. 1985).

Here, RFG's complaint recites with complete specificity multiple representations

allegedly made by KeyBank's employee Roberts, including:  (i) a written statement contained in

a letter dated April 13, 2007, that TBE's principal had access to $10 million in credit from

Page 15 - FINDINGS AND RECOMMENDATION

KeyBank; (ii) a written statement contained in a letter dated April 13, 2007, that TBE's principal had access to over $30 million in credit from KeyBank; (iii) a written statement that TBE had a wire transfer of $35.61 million pending; (iv) a written statement contained in a letter dated May 17, 2007, that TBE's principal "ha[d] the capability to transact the sales/purchase agreement;" (v) a written statement contained in a letter dated May 17, 2007, that TBE's payment to RFG "w[ould] be available forty five days after product has left its origination port and successfully been verified and transferred to [KeyBank's] refineries;" (vi) an oral statement that RFG's loan of $310,000 to TBE would "secure a wire transfer to KeyBank on behalf of TBE from which [KeyBank would] forward the payment of $664,750 . . . to RFG;" (vii) an oral statement that RFG did not need to "worry about" TBE; (viii) an oral statement that "[TBE] has the money – you'll be repaid;" and (ix) an oral statement that TBE was in "excellent standing" with KeyBank. In addition, the complaint alleges that each of these representations was false when made, that they were made either with knowledge of their falsity or with reckless disregard to their truth or falsity, that they were made with the intent that RFG would rely on them, and that RFG did rely on them by entering into the Loan 1 and Loan 2 transactions with TBE.  These allegations are adequate to put KeyBank on "notice of the particular misconduct which is alleged to constitute the fraud," *see Semegen*, 780 F.2d at 731, and therefore contain sufficient particularity to satisfy Rule 9(b).

Keybank argues that the particularity requirement of Rule 9(b) should apply not merely to the circumstances constituting fraud, but also with equal force to RFG's allegation that Roberts was acting as KeyBank's agent when he made the complained-of representations. Although KeyBank cites various opinions from district courts outside the Ninth Circuit in

support of its argument, the Ninth Circuit has never found Rule 9(b) applicable to averments of agency. Furthermore, this court finds KeyBank's argument facially unpersuasive, in that the proposed interpretation is inconsistent with the plain language of the rule. Nevertheless, assuming without deciding that the Ninth Circuit would find Rule 9(b) applicable to the circumstances giving rise to an agency relationship, this court finds that RFG's pleading alleges Roberts' agency with adequate particularity. RFG has alleged that Roberts was KeyBank's Assistant Vice President of Business Banking, which is adequate to put Keybank on notice of the theory of agency upon which RFG relies. *See Semegen*, 780 F.2d at 731

Because RFG's fraud claim has been pled with adequate particularity, KeyBank's motion to dismiss should not be granted on the ground of failure to comply with Rule 9(b).

### B.     Reasonable Reliance

In support of its argument that RFG has failed to plead that its reliance on Roberts' representations was reasonable, KeyBank points to what it characterizes as inherently implausible elements of the alleged representations. In doing so, KeyBank exhibits a misunderstanding of the plaintiff's burden at this stage of proceedings. In determining the merits of a motion to dismiss, this court accepts the allegations of the complaint as true, and interprets them in the light most favorable to the plaintiff. *See Kahle*, 474 F.3d at 667. Here, RFG has pled that it relied on Roberts' representations, that it had a right to do so, and that its reliance was reasonable.

Moreover, that Robert's representations may have contained objectively implausible elements does not foreclose the possibility that RFG's reliance could have been reasonable. A trier of fact could conclude that a moneylender's reliance on what it in good faith believed to be

Page 17 - FINDINGS AND RECOMMENDATION

an enforceable guaranty issued by a solvent financial institution of national reputation was reasonable, even in the presence of significant indicia of risk as to other elements of a proposed transaction.

Because the allegations of RFG's pleading raise RFG's right to relief in connection with its claim for fraud above the level of mere speculation, KeyBank's motion to dismiss should not be granted on the ground of failure adequately to plead reasonable reliance.

## CONCLUSION

For the reasons set forth above, this court recommends that defendant KeyBank National Association's motion to dismiss (#9) be granted as to each of RFG's three claims for breach of contract and as to its claim for negligent misrepresentation, and denied as to RFG's claim for fraud.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due January 3, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due fourteen days after the date the objections

///

///

///

///

///

Page 18 - FINDINGS AND RECOMMENDATION

are filed and the review of the Findings and Recommendation will go under advisement on that

date.

Dated this 20th day of December, 2007.

 /s/ Paul Papak
Honorable Paul Papak
United States Magistrate Judge