IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RAPID FUNDING GROUP, INC.,                                    CV. 07-1348-PK

                                                              OPINION AND
                                                              ORDER

                        Plaintiff,

v.


KEYBANK NATIONAL ASSOCIATION,



                        Defendant.

_____

PAPAK, Magistrate Judge:

        This action was filed against defendant KeyBank National Association ("KeyBank") by

plaintiff Rapid Funding Group, Inc. ("RFG"), on September 11, 2007, alleging three claims for

breach of contract, one claim for negligent misrepresentation, and one claim for fraud.  On

January 29, 2008, RFG amended its complaint to state only a single claim for fraud.  On

February 22, 2008, KeyBank answered RFG's amended complaint and brought third-party claims

Page 1 - OPINION AND ORDER

against Trade Base Equipment, Inc. ("TBE"), and TBE's principal, Brett Regal.  Default

judgment was entered against TBE and Regal on August 7, 2008.  This court has jurisdiction

over this action pursuant to 28 U.S.C. § 1332(a), based on the complete diversity of the parties

and the amount in controversy.

Now before the court is KeyBank's motion for protective order (#43), in which KeyBank

requests an order preventing RFG from deposing KeyBank's in-house counsel A. Michelle

DeShon.[1]  KeyBank and RFG each request award of fees and costs incurred in connection with,

respectively, bringing and opposing the motion.  I have considered KeyBank's motion, all of the

pleadings on file, and oral argument on behalf of the parties.  For the reasons set forth below,

KeyBank's motion is denied.  Each party will bear its own costs incurred in connection with the

motion.

## LEGAL STANDARD

Pursuant to Federal Civil Procedure Rule 26(c), a court may for "good cause" issue a

protective order "to protect a party or person from annoyance, embarrassment, oppression, or

undue burden or expense," including an order:

(A) forbidding the disclosure or discovery;

(B) specifying terms, including time and place, for the disclosure or discovery;
[or]

* * *

---

[1]  KeyBank also sought through its motion to prevent RFG from reopening the deposition
of KeyBank's Business Banking Sales Leader Matthew Wyner.  By minute order dated
September 3, 1998, this court disposed of the motion to the extent it addressed the Wyner
deposition, and took the motion under advisement only to the extent it addressed the DeShon
deposition.

Page 2 - OPINION AND ORDER

(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]

Fed. R. Civ. P. 26(c)(1).

To obtain a protective order, the party resisting discovery or seeking limitations must show "good cause" for its issuance by demonstrating harm or prejudice that will result from the discovery. Fed. R. Civ. P. 26(c)(1); *see also Phillips ex rel. Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206, 1210-1211 (9th Cir. 2002). Generally, a party seeking a protective order must meet a "heavy burden" to show why discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

## FACTUAL BACKGROUND

In March 2007, Brett Regal, the owner and principal of TBE, contacted Daniel Roberts, who at that time was KeyBank's Assistant Vice President and Business Banking Relationship Manager, regarding the possibility of obtaining loans from KeyBank. In early April 2007, Roberts set up a conference call among himself, Regal, and Roberts' superior at KeyBank, Matthew Wyner, to discuss the proposed loans. Following the conference call, KeyBank declined to extend the requested loans. Regal subsequently requested that Roberts assist TBE in locating an alternative lender. Roberts identified RFG, a private moneylender, as a potential source of funding.

Although RFG typically only made loans secured by assets or real property, Roberts offered to vouch for TBE's financial assets and capability to repay loans in lieu of any such security. On April 13, 2007, Roberts provided RFG with two letters, one indicating that TBE had access to a $10 million credit line with KeyBank, and the other that TBE had access to over $30 million in credit from KeyBank. Also on April 13, 2007, TBE opened an account with

Page 3 - OPINION AND ORDER

KeyBank, ostensibly for the purpose of receiving a $35.6 million wire transfer scheduled to take place on April 20, 2007.  The wire transfer never took place.

Apparently on the strength of Roberts' letters, RFG and TBE negotiated the terms of a loan transaction whereby RFG would lend TBE $310,000 ("Loan 1"), and within sixty days TBE would pay RFG $664,750 in satisfaction of the resulting debt.  In connection with these negotiations, Roberts provided a third letter to RFG "stating that TBE had a pending wire transfer of $35.61 million."  In addition, Roberts orally assured RFG that its loan of $310,000 to TBE would "secure a wire transfer to KeyBank on behalf of TBE from which Roberts agreed to forward the payment of $664,750 . . . to RFG."  On April 27, 2007, seven days after the wire transfer failed to take place as scheduled, RFG lent TBE $310,000.

Approximately three weeks later, before Loan 1 was scheduled to be repaid, TBE requested a second, more substantial loan ("Loan 2"),in connection with which the repayment terms of Loan 1 would be renegotiated.  The second loan was contemplated in the amount of $1.445 million, in exchange for which TBE would pay RFG $5 million within ninety days, in satisfaction of both Loan 1 and Loan 2.  On May 17, 2007, Roberts sent RFG a letter stating, *inter alia*, that TBE "has the capability to transact the sales/purchase agreement."  RFG lent TBE an additional $1.445 million between May 17 and May 25, 2007.

Shortly thereafter, KeyBank terminated Roberts' employment.  KeyBank'sVice President and Associate Counsel, A. Michelle DeShon, was present at Roberts' termination interview.  At that interview, DeShon asked Roberts questions and received replies from him.[2]  On June 4,

---

[2]  Several other persons who were present at the Roberts termination interview have already been deposed in this action.  At those depositions, counsel for RFG attempted to ask the witnesses about the questions asked and answers received by DeShon at the interview, but

2007, DeShon authored and sent to RFG a letter stating that all of Roberts' letters regarding

Regal and TBE "are void and may not be used or relied upon for any purpose. . . ."  DeShon's

letter admonished RFG to "[c]ease and desist any and all use of" Roberts' letters.  Substantially

similar letters were apparently sent to other persons with whom Roberts had been conducting

business.

TBE subsequently defaulted on its loans.  This action followed.

On July 16, 2008, RFG noticed DeShon's deposition.  On or around July 18, 2008,

counsel for RFG orally indicated to counsel for KeyBank that his client was voluntarily

withdrawing the DeShon deposition notice.  Subsequently, on July 21, 2008, counsel for RFG

confirmed in writing that his client had voluntarily withdrawn the deposition notice, but

indicated his intention to depose DeShon at some later, unspecified date.

## ANALYSIS

### I.    Protective Order

In general, to obtain a protective order the party resisting discovery or seeking limitations

on production or dissemination of discovered documents must show "good cause" for its

issuance by demonstrating harm or prejudice that will result from the discovery.  Fed. R. Civ. P.

26(c)(1).  "For good cause to exist, the party seeking protection bears the burden of showing

specific prejudice or harm will result if no protective order is granted."  *Phillips*, 307 F.3d at

1210-1211, *citing Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 476 (9th Cir.

1992) ("broad allegations of harm, unsubstantiated by specific examples or articulated reasoning,

---

KeyBank's counsel instructed the deponents not to answer, on the purported ground that
DeShon's colloquy with Roberts was protected by the attorney-client privilege, the work-product
doctrine, or both.

do not satisfy the Rule 26(c) test"); *see also San Jose Mercury News, Inc. v. United States Dist. Court - N. Dist.*, 187 F.3d 1096, 1103 (9th Cir. 1999) (to obtain a protective order a party must make a "particularized showing of good cause with respect to any individual document").  The Ninth Circuit has characterized the burden the resisting party must meet as "heavy." *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)

      If the party seeking protection establishes that the requisite particularized harm will occur absent a protective order, the courts must then balance the public interest in access to the information against the party's private interest in shielding it from public scrutiny to determine whether a protective order is appropriate.  *See Phillips*, 307 F.3d at 1211, *citing Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995).

      An additional burden must be met by a party seeking to depose an opposing party's litigation counsel.  In the leading case on deposition of trial counsel, *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986), the Eighth Circuit stated as follows:

> We recognize that circumstances may arise in which the court should order the taking of opposing counsel's deposition.  But those circumstances should be limited to where the party seeking to take the deposition has shown that (1) no other means exist to obtain the information than to depose opposing counsel. . . ; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.

*Shelton*, 805 F.2d at 1327; *see also*, *e.g.*, *Massachusetts Mut. Life Ins. Co. v. Cerf*, 177 F.R.D. 472, 479 (N.D. Cal. 1998) (same).

      Here, KeyBank has not met its burden of showing good cause for issuing a protective order as to the deposition of DeShon.  To the contrary, the record establishes that DeShon is the only practically available witness as to a range of fact issues that, however narrowly circumscribed, are at least potentially critical to the development of RFG's case.  These fact

Page 6 - OPINION AND ORDER

issues include both the questions asked and the answers received in the course of DeShon's colloquy with Roberts at his termination interview and the meaning of the language used in DeShon's "non-reliance" letter of June 4, 2007.

### A.    Roberts' Termination Interview

RFG is entitled to ask DeShon a limited range of questions as to her involvement in Roberts' termination interview.  No attorney-client privilege can be asserted in the questions DeShon asked at that interview or in the answers Roberts provided, both because DeShon's colloquy with Roberts took place within the context of a larger interview as to which any privilege has already clearly been waived and because DeShon's communications were specifically with Roberts, who cannot be considered to have enjoyed an attorney-client relationship with DeShon for purposes of the interview.  Similarly, the colloquy itself – as opposed to any notes taken by DeShon at or in preparation for the interview, or any mental impression she may have gleaned from Roberts' responses – cannot be considered attorney work product.

Because the other persons who were present at the interview have already been deposed, and because at those witness's depositions KeyBank's counsel instructed the deponents not to answer questions regarding DeShon's colloquy with Roberts, as a practical matter the deposition of DeShon is the only means available for obtaining information as to the questions asked and answers received in the course of that colloquy.  This non-privileged information is at least potentially critical to the preparation of RFG's case.  RFG is therefore entitled to depose DeShon as to the limited issue of the questions she asked and the answers she received to them at Roberts' termination interview.

Page 7 - OPINION AND ORDER

**B.    "Non-Reliance" Letter of June 4, 2007**

RFG is likewise entitled to ask DeShon a limited range of questions as to her authorship of the "non-reliance" letter of June 4, 2007.  No attorney-client privilege can be asserted in the letter, because the communication was not made between an attorney and her client.  Moreover, the letter is not confidential work product, because it was intentionally disclosed to its recipient, RFG, a potentially adverse third-party.  By contrast, KeyBank and DeShon may clearly assert a work-product privilege in DeShon's mental impressions as to why the letter was necessary, to whom it was sent, and why.

Because DeShon is the signatory and apparently the sole author of the letter, her deposition is the only means available for obtaining information as to the authentication of the letter and as to the meaning of its language.  That limited range of non-privileged information is at least potentially critical to the preparation of RFG's case.  RFG is therefore entitled to depose DeShon as to the limited issues of authentication of the letter and the meaning of its language.

**II.    Fees**

Federal Civil Procedure Rule 37 provides that award of attorney fees is mandatory to a party successfully opposing a motion for a protective order, absent circumstances rendering such an award of fees unjust:

> If [a] motion [requesting a protective order] is denied, the court . . . must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees. **But the court must not order this payment if the motion was substantially justified or other circumstances make an award of expenses unjust.**

Fed .R. Civ. P. 37(a)(5)(B) (emphasis supplied).

Federal Civil Procedure Rule 26(c) provides that "Rule 37(a)(5) applies to the award of

Page 8 - OPINION AND ORDER

expenses" incurred in connection with bringing or defending a motion requesting a protective order.  Fed R. Civ. P. 26(c)(3).

Here, KeyBank's motion was substantially justified.  The deposition of trial counsel is highly disfavored, and disposition of the motion presented a close question of law.[3]  Each party will therefore bear its own costs and fees incurred in connection with the motion.

## CONCLUSION

For the reasons set forth above, KeyBank National Association's motion for protective

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[3] Similarly, the motion was justified to the extent KeyBank sought to prevent the reopening of Wyner's deposition.  Prior to Wyner's first deposition, KeyBank warned that further document production would be forthcoming as to which Wyner's testimony would likely be required.  RFG ignored KeyBank's warning and elected to go forward with an arguably premature deposition, in full knowledge that KeyBank would oppose any motion to reopen it.  KeyBank's argument that RFG was not entitled to further deposition of Wyner under such circumstances, while ultimately unsuccessful, was nevertheless substantially justified.

order (#43) is denied.  Each party will bear its own fees and costs incurred in connection with the

motion.


        Dated this 10th day of September, 2008.


                                     /s/ Paul Papak_____
                                    Honorable Paul Papak
                                    United States Magistrate Judge