FILED

FEB 2 4 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RAPID FUNDING GROUP, INC.,                          CV 07-1348-PK

                                                    OPINION AND
                                                    ORDER

              Plaintiff,

v.

KEYBANK NATIONAL ASSOCIATION,

              Defendant.

_____

PAPAK, Magistrate Judge:

      This action was filed against defendant KeyBank National Association ("KeyBank") by

plaintiff Rapid Funding Group, Inc. ("RFG"), on September 11, 2007, alleging three claims for

breach of contract, one claim for negligent misrepresentation, and one claim for fraud. On

January 29, 2008, RFG amended its complaint to state only a single claim for fraud. On

Page 1 - OPINION AND ORDER

February 22, 2008, KeyBank answered RFG's amended complaint and brought third-party claims against Trade Base Equipment, Inc. ("TBE"), and TBE's principal, Brett Regal. Default judgment was entered against TBE and Regal on August 7, 2008. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), based on the complete diversity of the parties and the amount in controversy.

Now before the court are KeyBank's motion to compel (#96), by which KeyBank seeks to require RFG to produce a transcript of RFG's counsel's interview of Regal, and RFG's motion to determine the sufficiency of KeyBank's discovery responses (#102), by which RFG challenges the sufficiency of KeyBank's responses to forty-two of RFG's one hundred sixteen requests for admission. I have considered the motions, all of the pleadings on file, and oral argument on behalf of the parties. For the reasons set forth below, KeyBank's motion is denied, and RFG's motion is granted in part and denied in part as set forth below. Each party will bear its own costs incurred in connection with the motions.

## LEGAL STANDARDS

### I.    Scope of Permissible Discovery, Generally

Federal Civil Procedure Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter." Fed. R. Civ. P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* However, the district courts should limit the scope of discovery under specified

circumstances, as follows:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
>
>> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>>
>> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>>
>> (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

## II.      Motion to Compel

As noted above, Federal Civil Procedure Rule 26(b)(1) authorizes discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. Rule 26(b)(1) is to be construed broadly, and encompasses any matter that bears on, or that reasonably could lead to other matters that would bear on, any issue that is or may be in the case. *See, e.g.*, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 351 n. 12 (1978).

If a party elects to oppose a propounding party's discovery requests, the opposing party bears the burden of establishing that the discovery is overly broad, unduly burdensome or not relevant. *See Graham v. Casey's General Stores*, 206 F.R.D. 251, 253-4 (S.D. Ind. 2000). "Boilerplate, generalized objections are inadequate and tantamount to not making any objection at all." *Walker v. Lakewood Condominium Owners Assoc.*, 186 F.R.D. 584, 587 (C.D. Cal. 1999); *see also Farber and Partners, Inc. v. Garber*, 234 F.R.D. 186 (C.D. Cal. 2006).

Federal Civil Procedure Rule 37(a)(3)(B) empowers a propounding party to "move for an order compelling an answer, designation, production, or inspection" if:

> (i) a deponent fails to answer a question asked under Rules 30 or 31;

> (ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4);

> (iii) a party fails to answer an interrogatory submitted under Rule 33, or

> (iv) a party fails to respond that inspection will be permitted — or fails to permit inspection — as requested under Rule 34.

Fed. R. Civ. Pro. 37(a)(3)(B). Moreover, Rule 37(a)(4) provides that "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Rule 26 provides that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. Pro. 26(b)(1).

## III.    Work Product Doctrine

Federal Civil Procedure Rule 26(b)(3), the federal codification of the common-law work product doctrine, provides that:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

>> (i) they are otherwise discoverable under Rule 26(b)(1); and

>> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3). "[T]o qualify for protection against discovery under Rule 26(b)(3), documents must have two characteristics: (1) they must be prepared in anticipation of litigation

Page 4 - OPINION AND ORDER

or for trial, and (2) they must be prepared by or for another party or by or for that other party's

representative." *United States v. Torf (In re Grand Jury Subpoena)*, 357 F.3d 900, 907 (9th Cir.

2003) (internal quotation marks, modifications omitted), *quoting In re California Pub. Utils.*

*Comm'n*, 892 F.2d 778, 780-81 (9th Cir. 1989). "[A] document should be deemed prepared in

anticipation of litigation and thus eligible for work product protection under Rule 26(b)(3) if in

light of the nature of the document and the factual situation in the particular case, the document

can be fairly said to have been prepared or obtained because of the prospect of litigation."

*Id.* (internal quotation marks omitted), *quoting* Charles Alan Wright, Arthur R. Miller, and

Richard L. Marcus, 8 *Federal Practice & Procedure* § 2024 (2nd ed. 1994).

When sitting in diversity, the federal courts apply federal law to claims of work product

immunity. *See Baker v. GMC (In re GMC)*, 209 F.3d 1051, 1053 (8th Cir. 2000), *citing Simon v.*

*G.D. Searle & Co.*, 816 F.2d 397 (8th Cir. 1987).

## IV.    Requests for Admission

Federal Civil Procedure Rule 36 governs requests for admission. Rule 36(a)(1) provides

that :

> A party may serve on any other party a written request to admit, for purposes of
> the pending action only, the truth of any matters within the scope of Rule 26(b)(1)
> relating to:
>
>> (A) facts, the application of law to fact, or opinions about either; and
>>
>> (B) the genuineness of any described documents.

Fed. R. Civ. P. 36(a)(1). Rule 36(a)(4) provides that:

> If a matter is not admitted, the answer must specifically deny it or state in detail
> why the answering party cannot truthfully admit or deny it. A denial must fairly
> respond to the substance of the matter; and when good faith requires that a party

qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify and deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36(a)(4).

Federal Civil Procedure Rule 37(c)(2) governs the circumstance in which a party either

fails to respond or fails adequately to respond to a request for admission propounded under

Federal Civil Procedure Rule 36:

> If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. The court must so order unless:
>
> > (A) the request was held objectionable under Rule 36(a);
> >
> > (B) the admission sought was of no substantial importance;
> >
> > (C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or
> >
> > (D) there was other good reason for the failure to admit.

Fed. R. Civ. P. 37(c)(2). In relevant part, Rule 36(a) provides that:

> The requesting party may move to determine the sufficiency of an answer or objection. Unless the court finds an objection justified, it must order that an answer be served. On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served. The court may defer its final decision until a pretrial conference or a specified time before trial. Rule 37(a)(5) applies to an award of expenses.

Fed. R. Civ. P. 36(a)(6).

**V.     Fees**

Federal Civil Procedure Rule 37(a)(5) provides that a party prevailing on a motion to

compel discovery is entitled to award of attorney fees incurred in bringing the motion, absent

special circumstances:

> If [a] motion [to compel] is denied, the court . . . must, after giving an opportunity
> to be heard, require the movant, the attorney filing the motion, or both to pay the
> party or deponent who opposed the motion its reasonable expenses incurred in
> opposing the motion, including attorney's fees. But the court must not order this
> payment if the motion was substantially justified or other circumstances make an
> award of expenses unjust.

Fed .R. Civ. P. 37(a)(5)(A), (B).

## FACTUAL BACKGROUND

### I.    The Parties' Dispute

In March 2007, Brett Regal, the owner and principal of TBE, contacted Daniel Roberts,

who at that time was KeyBank's Assistant Vice President and Business Banking Relationship

Manager, regarding the possibility of obtaining loans from KeyBank. In early April 2007,

Roberts set up a conference call among himself, Regal, and Roberts' superior at KeyBank,

Matthew Wyner, to discuss the proposed loans. Following the conference call, KeyBank

declined to extend the requested loans. Allegedly, Regal subsequently requested that Roberts

assist TBE in locating an alternative lender. Roberts allegedly identified RFG, a private

moneylender, as a potential source of funding.

Although RFG typically only made loans secured by assets or real property, Roberts

offered to vouch for TBE's financial assets and capability to repay loans in lieu of any such

security. On April 13, 2007, Roberts provided RFG with two letters, one indicating that TBE

had access to a $10 million credit line with KeyBank, and the other that TBE had access to over

$30 million in credit from KeyBank. Also on April 13, 2007, TBE opened an account with

KeyBank, ostensibly for the purpose of receiving a $35.6 million wire transfer scheduled to take

place on April 20, 2007.  The wire transfer never took place.

Apparently on the strength of Roberts' letters, RFG and TBE negotiated the terms of a

loan transaction whereby RFG would lend TBE $310,000 ("Loan 1"), and within sixty days TBE

would pay RFG $664,750 in satisfaction of the resulting debt.  In connection with these

negotiations, Roberts provided a third letter to RFG "stating that TBE had a pending wire transfer

of $35.61 million."  In addition, Roberts orally assured RFG that its loan of $310,000 to TBE

would "secure a wire transfer to KeyBank on behalf of TBE from which Roberts agreed to

forward the payment of $664,750 . . . to RFG."  On April 27, 2007, seven days after the wire

transfer failed to take place as scheduled, RFG lent TBE $310,000.

Approximately three weeks later, before Loan 1 was scheduled to be repaid, TBE

requested a second, more substantial loan ("Loan 2"),in connection with which the repayment

terms of Loan 1 would be renegotiated.  The second loan was contemplated in the amount of

$1.445 million, in exchange for which TBE would pay RFG $5 million within ninety days, in

satisfaction of both Loan 1 and Loan 2.  On May 17, 2007, Roberts sent RFG a letter stating,

*inter alia*, that TBE "has the capability to transact the sales/purchase agreement."  RFG lent TBE

an additional $1.445 million between May 17 and May 25, 2007.

On June 4, 2007, KeyBank sent to RFG a letter stating that all of Roberts' letters

regarding Regal and TBE "are void and may not be used or relied upon for any purpose. . . ."

The letter admonished RFG to "[c]ease and desist any and all use of" Roberts' letters.  TBE

subsequently defaulted on its loans.  This action followed.

In addition to its third-party claims for indemnity and contribution against Trade Base and

its principal, KeyBank has asserted various affirmative defenses to liability, including unclean

hands and failure to mitigate.

## II.    Regal Interview Transcript

KeyBank filed its first set of requests for production on November 7, 2007, and RFG

served responses thereto on December 11, 2007.  These requests included the following:

**Request No. 4:**  All documents relating to TBE.

**Request No. 5:**  All documents relating to Brett Regal.

\* \* \*

**Request No. 8:**  All documents supporting your claim that KeyBank and TBE had
a partnership, as alleged in paragraph 18 of your complaint.

Subsequently, in or around mid-July 2008, counsel for RFG conducted an interview of

Brett Regal, and prepared a transcript of the interview.

On July 30, 2008, KeyBank filed a second set of requests for production, and RFG served

its responses on August 29, 2008.  These requests included the following:

**Request No. 18:**  All documents relating to Trade Base Equipment LLC or Trade
Base Equipment, Inc., including but not limited to correspondence with TBE
and/or Brett Regal and any and all business transactions affiliated in any way with
TBE and/or Brett Regal.

**Request No. 19:**  All documents relating to Brett Regal, including but not limited
to correspondence with Brett Regal and any and all business transactions affiliated
in any way with Brett Regal.

On August 26, 2008, three days before responses to the second set of requests for

production were served, counsel for RFG advised counsel for KeyBank that RFG was not

producing a privilege log because it had no responsive privileged documents.

On September 16, 2008, the day on which KeyBank's deposition of Brett Regal was

Page 9 - OPINION AND ORDER

scheduled to take place, counsel for RFG sent counsel for KeyBank a privilege log containing a

single entry: "Transcript of Brett Regal Interview," for which "Work Product" was listed as the

source of applicable privilege.  Regal's deposition was canceled for that day, for unrelated

reasons, and rescheduled to take place October 2, 2008.  At the deposition, Regal was questioned

regarding the interview, and responded that the meeting had been for the purpose of discussing

"questions of paperwork," specifying that "Some of what we discussed was about the sales that

we were trying to go forward with. . . . The paperwork that was still at KeyBank. . . ."  Counsel

for RFG, apparently present during the deposition, did not raise any work product objection

during this brief line of questioning.

In or around early November 2008, counsel for KeyBank requested that RFG produce the

transcript of the Regal interview.  RFG refused to comply, and KeyBank's motion followed.

### III.    KeyBank's Responses to RFG's Requests for Admission

On or around August 29, 2008, plaintiff RFG served its first set of thirty-seven requests

for admission on defendant KeyBank.  RFG served its second set of fifty-three additional

requests for admission approximately four days later, on or around September 2, 2008.  Its third

set, of twenty-six additional requests, was served later that same month, on or around September

29, 2008.

On October 14, 2008, KeyBank served responses to RFG's first and second set of requests

for admission.  Apparently later that same day, KeyBank amended its initial responses to both of

the first two set of requests.  KeyBank's response to the third set of requests was served October

29, 2008.  Subsequently, on January 6, 2009, KeyBank served a second amended response to the

first set of requests.  RFG now challenges the sufficiency of forty-two of KeyBank's admissions,

Page 10 - OPINION AND ORDER

specifically those in response to Requests Nos. 2, 3, 5, 8, 12, 16-18, 20, 22, 26-27, 30-37, 53, 57, 61, 65, 69, 73, 77, 81, 85, 89, 91-96, 105, and 108-112.

## ANALYSIS

### I.    Motion to Compel

KeyBank advances three discrete arguments in support of its position that it is entitled to production of the transcript of the Brett Regal interview. First, it argues that the transcript does not constitute work product (or, at most, could be work product only as to the questions asked by RFG's counsel and not as to Regal's responses to those questions). Second, it argues that RFG has waived any right to assert immunity from production of the transcript. Third, it argues that even if the transcript constitutes work product, it is entitled to production based on its substantial need for the transcript. None of the three arguments is persuasive.

As a preliminary matter, the transcript, in its entirety, is clearly attorney work product, being a document prepared by or on behalf of RFG's counsel in anticipation of litigation. *See* Fed. R. Civ. P. 26(b)(3); *see also Torf*, 357 F.3d 907. Material subject to the protections of the work product doctrine may include, but is not limited to, documents containing records of an attorney's mental impressions, conclusions, opinions, and legal theories. *See, e.g.*, Fed. R. Civ. P. 26(b)(3); *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992). Work product that does not contain a record of attorney mental impressions, sometimes referred to as "non-opinion" or "fact" work product, is entitled only to limited protection from discovery, specifically protection that may be withdrawn upon a showing of both substantial need for the material and unavailability of the substantial equivalent without undue hardship. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii); *Holmgren*, 976 F.2d at 577. By contrast, work product that contains a

record of attorney mental impressions, sometimes referred to as "opinion" work product, is entitled to protection that is subject to the substantial need exception only under the rare circumstance in which attorney mental impressions are directly at issue in the litigation. *See Fed. R. Civ. P.* 26(b)(3)(B); *Holmgren*, 976 F.2d at 577. The Regal transcript constitutes non-opinion work product, and therefore the immunity to which it is entitled is subject to the substantial need exception.

The protections of the work product doctrine may be waived by conduct inconsistent with assertion of immunity, for example by voluntarily disclosing attorney work product or by raising a claim that requires disclosure of protected materials. Here, KeyBank argues that RFG has waived work product protections by producing an untimely privilege log and by failing to object when Regal was asked deposition questions regarding his communications with RFG's counsel.

RFG's purportedly late production of its privilege log does not constitute waiver of work product immunity. Although untimely in the sense that it was not produced within thirty days of the date KeyBank propounded its discovery requests, the privilege log was produced less than two months following the date the Regal interview took place, and KeyBank was not prejudiced by the late production. Moreover, it is not clear that timely production of a privilege log is a mandatory prerequisite to asserting work product immunity, since (unlike documents subject to an evidentiary privilege, such as the attorney-client privilege) documents protected by the work product doctrine are outside the scope of requests made in discovery. *See* Fed. R. Civ. P. 26(b)(3).

Similarly, RFG's purported failure to object to deposition questions regarding Regal's communications with RFG's counsel cannot constitute waiver of work product immunity. The

work product doctrine shields only documents and tangible things from discovery; it extends no

protection to oral communications.  There was no work product immunity to be asserted in either

the Regal interview or its subject matter, and RFG's counsel could have had no grounds for

raising any such objection at Regal's deposition.  Only the transcript itself is subject to the

protections of Rule 26(b)(3).

Finally, the evidence in the record does not permit the conclusion that the substantial need

exception is applicable here.  To pierce work product immunity asserted in non-opinion work

product requires both that the requesting party has established its substantial need for the

materials and that the requesting party has established that the substantial equivalent of the

protected materials is not available through other means, absent undue hardship.  *See* Fed. R.

Civ. P. 26(b)(3)(A)(ii).  Assuming *arguendo* KeyBank's substantial need for the transcript, the

evidence in the record falls well short of establishing that the substantial equivalent was not

readily available through conventional discovery.  Instead, the evidence in the record establishes

that Regal was willing to and did submit to deposition by KeyBank's counsel, and that RFG's

counsel made no objection when KeyBank's counsel made inquiry regarding Regal's

communications with RFG's legal representatives.  Nowhere in the excerpts of his deposition

provided to the court did Regal suggest that his recollection of those communications was in any

way impaired, or that he was unwilling or unable to answer any questions put to him.  The

portions of the deposition transcript offered into the record do not contain questions calculated to

elicit the information KeyBank now seeks through document discovery.  On this record, in which

it appears that KeyBank may not have taken full advantage of its opportunity to obtain

information, I cannot issue a finding of undue hardship.

Page 13 - OPINION AND ORDER

Because the Regal transcript is clearly subject to the protections of the work product doctrine, and because the evidence in the record does not permit the conclusion that those protections have been waived or may be overcome, KeyBank's motion to compel is denied. Because, however, KeyBank was substantially justified in bringing its motion, in that its legal position was colorable and appears to have been adopted in good faith, each party shall bear its own costs incurred in connection with the motion.

## II.    Sufficiency of KeyBank's Admissions

RFG asserts that KeyBank's responses to its Requests for Admission Nos. 2, 3, 5, 30, and 37 are inadequate in that they fail to specify which portions of the requests are admitted and which portions are denied, and/or that the responses fail to properly qualify partial denials, that the responses to Requests Nos. 3, 8, 12, 16-18, 26, 27, 31, and 32 are inadequate in that they contain indefensible semantic objections, and that the responses to Requests Nos. 20, 22, 33-36, 53, 57, 61, 65, 69, 73, 77, 81, 85, 89, 91-96, 105, and 108-112 are inadequate in that they contain improper objections asserting that the requests call for legal conclusions and/or determinations of genuineness.

Analysis of the responses establishes that the bulk of them, despite RFG's assertions, address the substance of the requests without improper evasion. However, RFG's arguments are well taken as to five of the responses. Requests for Admission Nos. 33-36, and the responses thereto, are as follows:

> **REQUEST FOR ADMISSION NO. 33:**  Admit that the document attached hereto as Exhibit G is a true copy of a letter the original of which was printed on genuine KeyBank letterhead.

> **RESPONSE:**    KeyBank objects to this request as vague and ambiguous

Page 14 - OPINION AND ORDER

because "genuine KeyBank letterhead" is undefined.  Subject to and without
waiver of that objection, KeyBank denies this request.

      **REQUEST FOR ADMISSION NO. 34:**  Admit that the document
attached hereto as Exhibit H is a true copy of a letter the original of which was
printed on genuine KeyBank letterhead.

      **RESPONSE:**   KeyBank objects to this request as vague and ambiguous
because "genuine KeyBank letterhead" is undefined.  Subject to and without
waiver of that objection, KeyBank denies this request.

      **REQUEST FOR ADMISSION NO. 35:**  Admit that the document
attached hereto as Exhibit I is a true copy of a letter the original of which was
printed on genuine KeyBank letterhead.

      **RESPONSE:**   KeyBank objects to this request as vague and ambiguous
because "genuine KeyBank letterhead" is undefined.  Subject to and without
waiver of that objection, KeyBank denies this request.

      **REQUEST FOR ADMISSION NO. 36:**  Admit that the document
attached hereto as Exhibit J is a true copy of a letter the original of which was
printed on genuine KeyBank letterhead.

      **RESPONSE:**   KeyBank objects to this request as vague and ambiguous
because "genuine KeyBank letterhead" is undefined.  Subject to and without
waiver of that objection, KeyBank denies this request.

It is not clear whether KeyBank's denials are intended to convey that the documents in question

are not true copies, whether it denies that the letterhead on which the letters were printed is

"genuine KeyBank letterhead," or both.  Keybank must revise its responses to Requests Nos. 33-

36 to state with specificity the scope of its denials.

      KeyBank's response to Request for Admission No. 37 is similarly difficult to parse:

      **REQUEST FOR ADMISSION NO. 37:**  Admit that the document
attached hereto as Exhibit L is a true copy of an email sent from KeyBank to RFG.

      **RESPONSE:**   KeyBank admits that the part of Exhibit L that is defined
as the "forwarded message" was sent from Dan Roberts' KeyBank email account.
Except as expressly admitted, KeyBank denies the remainder of the request.

Page 15 - OPINION AND ORDER

KeyBank admits that a portion of the email is a true copy of an email sent from Roberts' email account, and to deny the remainder of the request. However, it is not clear from KeyBank's response whether it intends to deny merely that any other portion of the email was sent from any KeyBank account, or in addition that any portion of the email was sent to a recipient at RFG. Because the response fails adequately to address the substance of the request, KeyBank must amend its response to Request No. 37 to comply with the requirements of Rule 36(a)(4).

Analysis of the responses to the remaining requests establishes that each of them addresses the substance of the corresponding request without evasion. I therefore find that these responses are sufficient for purposes of Federal Civil Procedure Rule 36(a)(4), and that no further amendment is required to bring KeyBank's responses into compliance with the rule.

Because RFG's motion is granted in part and denied in part, each party shall bear its own costs in connection with the motion to determine the sufficiency of KeyBank's responses.

## CONCLUSION

For the reasons set forth above, KeyBank's motion to compel (#96) is denied, and RFG's motion to determine the sufficiency of KeyBank's discovery responses (#102) is granted in part and denied in part, as follows: KeyBank shall amend its responses to Requests for Admission Nos. 33-37 to comply with the requirements of Federal Civil Procedure Rule 36(a)(4), and each

/ / /

/ / /

/ / /

/ / /

of the other responses which are the subject of the motion is deemed sufficient.  Each party will

bear its own fees and costs incurred in connection with both motions.


Dated this 24th day of February, 2009.

Honorable Paul Papak
United States Magistrate Judge

Page 17 - OPINION AND ORDER